[No. G000106. Fourth Dist., Div. Three. Aug. 24, 1984.]

NELSON GOODYEAR, Plaintiff and Respondent, v.
PETER D. MACK et al., Defendants and Appellants.

**COUNSEL**

Michael R. Williams, Ball, Hunt, Hart, Brown & Baerwitz and Paul R. Pearlson for Defendants and Appellants.

Timothy D. Brown and James K. Leese for Plaintiff and Respondent.

**OPINION**

**SONENSHINE, J.**—Peter Mack and Marcel Jordan appeal summary judgment entered against them and in favor of Nelson Goodyear in his action on a promissory note.

In 1981, Mack and Jordan purchased real property (the Henderson property). The property was encumbered by a purchase money note and trust deed, originally in the amount of $84,200, but reduced at the time of purchase by Mack and Jordan to $29,986.10. Following the sale, Goodyear, the original vendor and holder of the note, instituted foreclosure proceedings. Pursuant to agreement of the parties, the trust deed was reconveyed, the note extinguished and a new note executed in the amount of $29,986.10. This new note was secured by a trust deed, in fourth position, on other property (the Figueroa property) owned by Mack and Jordan.

Subsequently, a senior lienor foreclosed on and purchased the Figueroa property. Goodyear's security was extinguished and no excess funds were available. Goodyear filed a complaint on the promissory note and was granted summary judgment pursuant to *Roseleaf Corp.* v. *Chierighino* (1963) 59 Cal.2d 35 [27 Cal.Rptr. 873, 378 P.2d 97].

Mack and Jordan contend Goodyear is barred from obtaining a deficiency judgment by Code of Civil Procedure section 580b,[1] claiming the substituted note and trust deed retained the purchase money status of the original all inclusive note and trust deed. They further argue they could not waive the protection of section 580b "in advance" and summary judgment was im-

---

[1]All references are to the Code of Civil Procedure unless otherwise identified.

proper as triable issues of fact remained. Goodyear requests sanctions for a frivolous appeal.

### DISCUSSION

■ "In California, as in most states, a creditor's right to enforce a debt secured by a mortgage or deed of trust on real property is restricted by statute. Under California law 'the creditor must rely upon his security before enforcing the debt. (Code Civ. Proc., §§ 580a, 725a, 726.) If the security is insufficient, his right to a judgment against the debtor for the deficiency may be limited or barred by sections 580a, 580b, 580d or 726 of the Code of Civil Procedure' (*Roseleaf Corp.* v. *Chierighino* (1963) 59 Cal.2d 35, 38-39 [27 Cal.Rptr. 873, 378 P.2d 97].)" (*Walker* v. *Community Bank* (1974) 10 Cal.3d 729, 733 [111 Cal.Rptr. 897, 518 P.2d 329].)

Both section 726, relating to judicial foreclosure sales, and section 580a, governing private foreclosure sales, limit a "deficiency judgment after exhaustion of the security to the difference between the fair value of the property at the time of the sale (irrespective of the amount actually realized at the sale) and the outstanding debt for which the property was security." (*Cornelison* v. *Kornbluth* (1975) 15 Cal.3d 590, 601 [125 Cal.Rptr. 557, 542 P.2d 981].) To further protect a purchaser, section 580b[2] was enacted to bar "deficiency judgments altogether on purchase money mortgages" (*ibid.*), regardless of whether the holder of the purchase money trust deed forecloses (§ 580b) or loses his security because of foreclosure by a senior encumbrancer. (*Brown* v. *Jensen* (1953) 41 Cal.2d 193 [259 P.2d 425], *Shepherd* v. *Robinson* (1981) 128 Cal.App.3d 615 [180 Cal.Rptr. 342].)

■ There is no dispute Goodyear's original note and trust deed were subject to section 580b. Nor was the character changed by subsequent transactions involving the property, culminating in the sale to Mack and Jordan. The only issue is whether that status was destroyed by extinguishing the note, reconveying the trust deed and substituting security.

Mack and Jordan attempt to distinguish *Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d 35 on the ground their security was substituted rather than originally placed on unpurchased property. The plaintiff in *Roseleaf* sold a hotel to defendant, consideration for which included a note and trust deed on the hotel and three additional notes, each secured by second trust deeds on other property. The latter deeds became valueless following foreclosure

---

[2]Section 580b. "No deficiency judgment shall lie in any event after any sale of real property for failure of the purchaser to complete his contract of sale, or under a deed of trust, or mortgage, given to the vendor to secure payment of the balance of the purchase price of real property, . . ."

by senior lienors. The plaintiff's action for unpaid amounts on the three notes was not barred by section 580b as the notes failed to comply with "the *standard purchase money mortgage transaction,* in which the vendor of real property retains an *interest in the land sold* to secure payment of part of the purchase price." *(Id.,* at p. 41, italics added.) Further, the defendant was not placed in the position which section 580b was designed to prevent, namely losing the "property he purchased yet [remaining] liable for the purchase price." *(Id.,* at pp. 42-43.)[3]

On point is *Syrek* v. *Gould* (1966) 244 Cal.App.2d 149 [52 Cal.Rptr. 827].[4] Syrek sold three lots, receiving separate notes and subordinated trust deeds on each lot. Desiring to reconvey two of them unencumbered, Gould offered to reimburse Syrek for reconveyances relinquishing his security interests. Not wishing cash at this time, Syrek reconveyed in exchange for new notes secured by second and third trust deeds on the remaining lot. Gould defaulted and his personal liability on the new notes was not eliminated, despite the fact "the obligations they represented initially had been for the purchase price of real property . . . ." *(Id.,* at p. 151.) Following extensive quotations from *Roseleaf,* the court held section 580b inapplicable. Mack and Jordan can fare no better. "[I]f section 580b were held to be applicable to the [$29,986.10] note given to [Goodyear] . . . [Mack and Jordan] would be permitted to retain [the Henderson property] without paying [the agreed] purchase price therefor. Such a result obviously is not in accord with the legislative intent clearly enunciated in section 580b nor with the dictates of common justice."[5] *(Id.,* at p. 153.)

■ The California Supreme Court in *Spangler* v. *Memel* (1972) 7 Cal.3d 603 [102 Cal.Rptr. 807, 498 P.2d 1055] reiterated its holding in *Roseleaf*: section 580b automatically applies "only to the standard purchase money transaction and . . . with respect to variants from this standard . . . section

---

[3]We are singularly unimpressed with the argument the parties desire to remove the encumbrance on the first property and place a new trust deed on second property renders this action "radically different from *Roseleaf.*" Rather, if the purchased property were imbued with the characteristics assigned by Mack and Jordan—"dilapidated," "deplorable," "Negative cash flow," and facing condemnation—the choice was theirs to allow Goodyear's foreclosure.

[4]Mack and Jordan's reliance on *Budget Realty, Inc.* v. *Hunter* (1984) 157 Cal.App.3d 511 [204 Cal.Rptr. 48] is misplaced. "The sole issue on appeal [was] whether a purchase money trust deed is taken outside the antideficiency protection of Code of Civil Procedure section 580b when the trust deed contains an unexercised agreement to subordinate the security to a construction loan." *(Id.,* at p. 512, fn. omitted.)

[5]*Lucky Investments, Inc.* v. *Adams* (1960) 183 Cal.App.2d 462 [7 Cal.Rptr. 57], cited by Mack and Jordan is inapposite. The canceled notes, replaced by new ones, attached to the *same purchased* property. *Lucky* admittedly was "not overruled by *Roseleaf* in any manner," but there was no necessity as the facts are distinguishable and they stand for different propositions.

580b would apply only if the factual circumstances came within the purposes of the section." (*Id.*, at p. 610.) The first clear purpose of the statute is to prevent overvaluation by placing " 'the risk of inadequate security on the purchase money mortgagee.' " (*Id.*, at p. 612.) The second is to prevent aggravation of a depression in land values by not burdening purchasers with loss of the property *plus* personal liability. (*Shepherd* v. *Robinson, supra,* 128 Cal.App.3d 615, 623.)

■ We therefore examine the facts of this case in light of the purposes of the section. Had Goodyear continued with his foreclosure action following purchase of the Henderson property by Mack and Jordan, (1) he would have assumed the risk of inadequate security in the property he originally sold; and (2) Mack and Jordan could not be burdened with both loss of the property and personal liability. However, the purchase money note was extinguished, not reexecuted to attach to the *same* property (*Lucky*) but used "to refinance the property, i.e., to *pay off* the purchase money" encumbrance. (*Union Bank* v. *Wendland* (1976) 54 Cal.App.3d 393, 399 [126 Cal.Rptr. 549], italics added.)[6]

Further, the new note was secured by property other than that securing the original purchase money note. Goodyear retained no interest in the Henderson land to secure any part of the note's repayment. "[I]f there is any merit in the theory that 'the vendor knows the value of his security and assumes the risk of its inadequacy,' that theory does not apply here. There is no reason to assume that [Goodyear] had any greater knowledge of the value of [Figueroa] land than did [Mack and Jordan]." (*Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d 35, 43.) Pursuant to the second statutory purpose, Mack and Jordan are not burdened with loss of the Henderson property—only with their rightful liability for its price.

Nor did the note represent money related to purchase of the Figueroa property. Under "the strict terms of the statute, [it] applies only to *purchase money* debts *secured by* the *property purchased.*" (*Shepherd* v. *Robinson, supra,* 128 Cal.App.3d 615, 624; *Scott* v. *Fidelity Dev. Co.* (1974) 39 Cal.App.3d 131, 135 [113 Cal.Rptr. 855].)

We conclude as a matter of law Goodyear is not barred under section 580b from obtaining a deficiency judgment.

Mack and Jordan next claim they "did not waive the purchase money protection," citing *Lucky Investments, Inc.* v. *Adams, supra,* 183

---

[6]Where subsequent amounts secured by deed of trust resemble loans, "[t]he reason for the special rule for purchase money mortgages is not applicable" (*Hunt* v. *Smyth* (1972) 25 Cal.App.3d 807, 835 [101 Cal.Rptr. 4]).

Cal.App.2d 462. We agree the protection may not be waived *in advance.* (*Id.,* at p. 467.) It may, however, be waived *subsequent* to the sale (*Shepherd* v. *Robinson, supra,* 128 Cal.App.3d 615, 626.) Their rights were established when they purchased the Henderson property—foreclosure by Goodyear under the purchase money note and trust deed would negate a deficiency judgment. But they waived those *previously acquired* rights when they "paid off" the encumbrance on the purchased property and executed a note secured by property *other than* the purchased property.

They further claim triable issues of fact remain as to (1) intent of the parties at the time of the security transfer and (2) Goodyear's desire for the transfer. Their contentions are meritless: the character of the notes and trust deeds are determined by statute and the parties' "desires" are immaterial. (*Syrek* v. *Gould, supra,* 244 Cal.App.2d 149; *Lucky Investments, Inc.* v. *Adams, supra,* 183 Cal.App.2d 462.)

Goodyear has requested sanctions against Mack and Jordan "for taking a frivolous appeal." ■ The definition of a frivolous appeal is elusive, although the standards "fall into two general categories: subjective and objective. [Citation.] The subjective standard looks to the motives of the appellant and his or her counsel. . . . [¶] The objective standard looks at the merits of the appeal from a reasonable person's perspective." (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 649 [183 Cal.Rptr. 508, 646 P.2d 179].) Improper appeals are "a time-consuming and disruptive use of the judicial process" (*id.,* at p. 650) yet "[c]ounsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win on appeal." (*Ibid.*)

We find no evidence of subjective bad faith, and although we affirm the trial court, we cannot find it "unreasonable for [Mack and Jordan's] counsel to think the issues were arguable."[7] (*Id.,* at p. 651.)

The judgment is affirmed. Goodyear to receive costs on appeal.

Trotter, P. J., and Wallin, J., concurred.

---

[7]See *Beckstead* v. *International Industries, Inc.* (1982) 127 Cal.App.3d 927 [179 Cal.Rptr. 767], granting sanctions "[i]n light of appellants' long history of unmeritorious and frivolous appeals . . . ." (*Id.,* at p. 935.)